UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW E.,

                                         Plaintiff,

                                                                                 DECISION AND ORDER

                                                                                  19-CV-6877L

                v.

ANDREW SAUL,
Commissioner of Social Security,

                                         Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On May 11, 2016, plaintiff, then twenty-seven years old, filed an application for supplemental security income, alleging an inability to work since July 4, 2015. (Administrative Transcript, Dkt. #5 at 12). That application was initially denied. Plaintiff requested a hearing, which was held October 23, 2018 before administrative law judge ("ALJ") John P. Costello. On December 12, 2018 the ALJ issued a decision finding plaintiff not disabled. (Dkt. #6 at 12-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 3, 2019. (Dkt. #5 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #9), and the Commissioner has cross moved (Dkt. #11) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records reflecting treatment for bipolar disorder, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and lumbar disease, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #5 at 14).

In applying the special technique, the ALJ found that plaintiff had mild limitations in understanding, remembering and applying information, moderate limitations in interacting with others, moderate limitations in concentration, persistence and pace, and mild limitations in the ability to adapt or manage himself. (Dkt. #5 at 15).

Upon review of the record, ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that plaintiff must be able to stand up for two minutes at his work station after 30 minutes of sitting. He is further limited to simple, routine and repetitive tasks, and can have no more than occasional interaction with coworkers, supervisors or the public. Plaintiff must perform low stress work, defined as work involving no more than occasional decision making. (Dkt. #5 at 16).

When provided with this RFC as a hypothetical at the hearing, vocational expert Peter A. Manzi testified that such an individual could perform the representative sedentary, unskilled positions of table worker, addresser, and lens inserter. (Dkt. #5 at 20). The ALJ accordingly found plaintiff not disabled.

**I.      Treating Physician's Opinion**

Plaintiff argues that the ALJ erred when he failed to apply the treating physician rule to the opinions of plaintiff's treating internist, Dr. Jeffrey J. Harp.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d).[1]

Further, the ALJ must articulate his reasons for the weight he assigns to a treating physician's opinion. *See Shaw*, 221 F.3d at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is typically reversible error. "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating

---

[1] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

3

physician's opinion, affirmance may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Dr. Harp, a family medicine specialist who treated plaintiff for his pack pain and psychiatric conditions beginning March 6, 2014, rendered an opinion on October 23, 2018. (Dkt. #5 at 466-71). Dr. Harp listed plaintiff's diagnoses as opioid addiction in remission, bipolar disorder, ADHD, anxiety disorder, and chronic back pain. He opined that plaintiff's mental symptoms would "intermittent[ly]" flare up and cause severe limitations, or even the complete inability to function, with respect to the ability to understand work-like procedures and instructions, concentrate and remember, ask for assistance, interact with the public, accept instructions, get along with coworkers, and deal with stress. Further, plaintiff's back pain would "intermittent[ly]" cause exertional limitations, limiting plaintiff to sitting for up to 30 minutes at a time (for a total of at least six hours), and to standing for up to 15 minutes at a time (for a total of less than two hours) in an 8-hour workday. Plaintiff could no more than occasionally lift ten pounds, twist, stoop, and climb stairs, could rarely crouch or squat, and could not reach overhead for more than 10% of the workday. Plaintiff would also be off-task for 30% of the workday, would require unscheduled breaks once or twice per day, and would miss four days of work per month. *Id*.

The ALJ acknowledged Dr. Harp's status and specialty as a treating family physician, but assigned his opinion "little" weight, on the grounds that Dr. Harp's opinion was inconsistent with Dr. Harp's examination findings, which tended to show that plaintiff's mental symptoms had gradually improved with treatment and that his physical pain was largely controlled with medications. (Dkt. #5 at 19).

4

The ALJ's assessment of Dr. Harp's opinion and its consistency (or lack thereof) with plaintiff's treatment notes was not erroneous. Although plaintiff's complaints of depression, anxiety and concentration-related symptoms waxed and waned (Dkt. #5 at 359, 378, 414), they were often assessed as stable or improving, and plaintiff's mood and affect were consistently observed to be within normal limits, with no thought disorder. (Dkt. #5 at 370-71, 385-86, 389-92, 393-94, 400, 410-11, 415-17, 420-21). Although plaintiff's back pain was a recurring complaint and Dr. Harp noted that plaintiff's back was tender and that plaintiff presented using a cane on one occasion, objective findings typically included negative straight leg raising tests (suggesting an absence of disc protrusions or impingement of the spinal nerve roots), no lower extremity weakness, and reflexes within normal ranges. *Id.*

Plaintiff's treatment was conservative. Dr. Harp treated plaintiff's narcotic dependence with lithium (later discontinued), his depression and his ADHD and anxiety with prescription impulse control and antidepressant medications, and his back pain with ibuprofen (and, during flare-ups caused by injuries, with a prescription muscle relaxant and opioid medication). (Dkt. #5 at 353, 397, 402-03, 408, 473). Although Dr. Harp suggested that plaintiff seek mental health counseling, it does not appear from the record that plaintiff did so, nor was specialist treatment for plaintiff's back pain sought or recommended.

In brief, while a treating physician's opinion is entitled to controlling weight where it is "well supported by medical findings," Dr. Harp's opinion described dramatic limitations which were not supported by objective testing, by plaintiff's treatment records (including Dr. Harp's own records), by the nature or intensity of plaintiff's mental health treatment, or by any other medical opinion. These factors furnished "good reasons" for the ALJ to decline to grant it controlling

weight. *See e.g.*, *Monroe v. Commissioner*, 676 Fed. App'x. 5, 7-9 (2d Cir. 2017)(unpublished opinion).

Further, the RFC determined by the ALJ was supported by substantial evidence of record, including the opinions of consulting internist Dr. Harbinder Toor (Dkt. #5 at 248-51), consulting psychologist Dr. Yu-Ying Lin (Dkt. #5 at 254-58), and agency reviewer T. Bruni (Dkt. #5 at 334-36), as well as with thoracic and lumbosacral spinal imaging studies showing no abnormalities. (Dkt. #5 at 252, 463). Although plaintiff argues that the ALJ's RFC finding did not sufficiently account for the "moderate to marked" limitations in dealing with stress that Dr. Lin opined, the ALJ afforded partial weight to Dr. Lin's opinion, (Dkt. #5 at 18-19), and explicitly tailored his RFC finding to account for plaintiff's mental health symptoms by limiting plaintiff to simple, routine and repetitive tasks, low-stress work with only occasional decision making, and no more than occasional interaction with others. As such, the RFC "adequately accounted for [plaintiff's] moderate-to-marked stress-related limitations." *Hill v. Commissioner*, 2020 U.S. Dist. LEXIS 29247 at *13 (W.D.N.Y. 2020). *See also Wilson v. Commissioner*, 2020 U.S. Dist. LEXIS 137196 at *14 (W.D.N.Y. 2020)(limitations to simple tasks and occasional social interaction adequately account for moderate to marked stress-related limitations); *Gomez v. Commissioner*, 2020 U.S. Dist. LEXIS 49261 at *14-*15 (W.D.N.Y. 2020)(same)(collecting cases).

In sum, I find that the weight given by the ALJ to Dr. Harp's opinion was appropriate and sufficiently "complied with the dictates of the treating physician rule," and that the ALJ's decision is supported by substantial evidence, and was not the product of legal error. *Monroe*, 676 Fed. App'x 5 at 8.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of reversible legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 23, 2021.